IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRACO CHILDREN'S
PRODUCTS INC.

     Plaintiff,

v.

KIDS II, INC.

     Defendant.

CIVIL ACTION NO:

1:12-CV-3246-SCJ

## KIDS II, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

i

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. ARGUMENT ....................................................................................................2

    A.   "generally vertical axis of rotation".....................................................2

    B.   "defining" (Kids II) or "a drive system defining a generally vertical axis of rotation" (Graco)................................................................6

    C.   "cantilevered"....................................................................................8

    D.   "driven end".....................................................................................11

    E.   The Child Supporting Device Terms ...............................................12

    F.   The Frame Assembly Terms .............................................................14

    G.   "motor" ............................................................................................16

    H.   "configured".....................................................................................18

    I.   The Frequency Terms.......................................................................19

         1. The Frequency Terms are not used interchangeably.....................19

         2. Graco's proposed construction is not supported by the intrinsic or extrinsic evidence..................................................................22

         3. The term "natural resonant frequency" is indefinite ....................24

# TABLE OF AUTHORITIES

## Cases

*Accent Packaging v. Legett & Platt,* 707 F.3d 1318, 1326 (Fed. Cir. 2013) ......................5

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3

(Fed. Cir. 2006) ...............................................................................................19

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349

(Fed. Cir. 2012) ...............................................................................................19

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317

(Fed. Cir. 2000) ...............................................................................................20

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005)..........24

*Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009)..............15

*Energizer Holdings, Inc. v. Int'l Trade Comm'n* 435 F.3d 1366, 1369

(Fed. Cir. 2006) ...............................................................................................25

*Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007) ..............18

*Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).............11

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,* 386 F.3d 1133, 1138

(Fed. Cir. 2004) .................................................................................................5

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1323-24 (Fed. Cir. 2005)......................................8

*PureChoice, Inc. v. Honeywell Int'l, Inc.*, No. 2:06-CV-244, 2008 U.S. Dist.

LEXIS 4246, at *17-19 (E.D. Tex. Jan. 22, 2008) ...........................................24

*Sandovik Intellectual Prop. AB v. Kennametal, Inc.*, No. 10-CV-00654, 2012 U.S.

Dist. LEXIS 103169, at *17 (W.D. Pa. July 24, 2012) .....................................24

*Selex Communications, Inc. v. Google, Inc.*, No. 1:09-CV-2927, 2013 U.S. Dist.

LEXIS 50061, at *6 (N.D. Ga. April 8, 2013).....................................................9

*Texas Instr. v. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) ....................11

**Statutes**

35 U.S.C. § 112

**CLAIM TERMS IN DISPUTE**

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "generally vertical axis of rotation" | axis of rotation with a primarily vertical orientation, but that may be offset from vertical up to 45 degrees | axis of rotation with an intended offset from vertical of more than 0 degrees and up to 45 degrees |
| "defining" (Kids II)<br><br>"a drive system defining a generally vertical axis of rotation" (Graco) | forms or comprises | a drive system defining an axis of rotation with an intended offset from vertical of more than 0 degrees and up to 45 degrees |
| "cantilevered" | supported at only one end | projected generally horizontally in a radial direction and supported at only one end |
| "driven end" | the end or tip of the support arm | No construction needed.  In the event construction is needed: end moved by a drive. |
| "child supporting device" | a stand-alone apparatus designed to support a child | No construction needed.  In the event construction is needed: device for carrying or supporting a child. |
| "removable seat" | a stand-alone seat designed to support a child and that can be removed and used apart from the child motion device | No construction needed.  In the event construction is needed: seat that could be removed. |
| "child seat" | a stand-alone seat designed to support a child | No construction needed.  In the event construction is needed: device for supporting a child's buttocks. |
| "base section" | the lowest or bottom portion of the frame assembly | No construction needed.  In the event construction is needed: section beneath |
| "spine" | a single vertical column or post | No construction needed.  In the event construction is needed: |

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| | | upward projection |
| "upright section" | the portion of the frame assembly perpendicular to the reference plane or floor surface | No construction needed.  In the event construction is needed: section that extends upward |
| "motor" | a rotating machine that converts electrical energy into mechanical energy through a drive shaft | No construction needed.  In the event construction is needed: powered source of motion |
| "configured" | set up or designed to operate in a certain way | No construction needed.  In the event construction is needed: designed or adapted |
| "natural frequency" | a frequency at which a system oscillates in the absence of an external force | frequency of free motion |
| "resonant frequency" | a frequency at which some measure of the response of a system to an external force is at a maximum | frequency of free motion |
| "natural resonant frequency" | This claim term is indefinite under 35 U.S.C. § 112 | frequency of free motion |

## EXHIBITS

 "Ex. __" refers to the exhibits attached to the Declaration of Scott P. Amy in Support of Kids II's Opening Claim Construction Brief (Dkt. No. 54-1).  Further, references to patent columns and lines are signified by the following shorthand: [Column No.] : [Line No.], *e.g.*, Column 1, line 1-5 is shown as Ex. 1, 1:1-5.

## I.    INTRODUCTION

Graco's assertion in its Opening Brief that Kids II is misusing the claim construction process is without merit.  Kids II requests that this Court construe a mere 15 terms, which is a paltry number in comparison to the *77 claims* that Graco has asserted in this case.  As such, Kids II has proposed constructions for 14 of the 15 terms in dispute that are fully supported by the intrinsic record and, where necessary, reinforced by extrinsic evidence.  However, the fifteenth term – "natural resonant frequency" – is not amenable to construction and is indefinite.

In contrast, Graco has devised a set of unworkable constructions for the five terms that it requests that the Court construe in an attempt to manufacture infringement arguments and side-step prior art.  In doing so, Graco's proposed constructions violate some of the most basic rules of claim construction.  For instance, Graco's proposed construction for the term "generally vertical axis of rotation" excludes a preferred embodiment from the scope of the claims, which is improper under Federal Circuit law.  Similarly, Graco's proposed construction for the term "cantilevered" ignores the claim language and imports a limitation from an embodiment in the specifications into the claims, which is also improper.  Lastly, Graco's proposed constructions for the terms "natural frequency" and "resonant frequency" are at odds with their usage in the Patents-in-Suit, as well as the well-accepted, technical definitions for these terms.

Contrary to Graco's assertions, the remaining claim terms are not "straightforward terms that are routinely encountered and understood by lay persons."  Rather, all of these terms have specific meanings in the context of the Patents-in-Suit that would be helpful to define for a lay jury.  For example, the terms "driven end," "base section," and "upright section" are not terms routinely used, encountered, or readily understood by a lay person.  Similarly, a lay person would not readily understand the difference between a "child supporting device," "removable seat," and "child seat" in the context of the Patents-in-Suit.  Thus, while Graco would prefer to leave these terms undefined so it can fabricate infringement arguments at a later date, construction of these terms would be beneficial to the jury and the most efficient use of the Court's resources.

Accordingly, Kids II respectfully requests that the Court adopt its constructions for 14 of the 15 terms in dispute, and conclude the term "natural resonant frequency" is indefinite pursuant to 35 U.S.C. § 112.

## II.   ARGUMENT

### A.   "generally vertical axis of rotation"

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "generally vertical axis of rotation" | axis of rotation with a primarily vertical orientation, but that may be offset from vertical up to 45 degrees | axis of rotation with an intended offset from vertical of more than 0 degrees and up to 45 degrees |

As noted in both Kids II's and Graco's Opening Briefs, the parties do not dispute that the inventors provided an explicit definition of the term "generally" in the

specifications of the Patents-in-Suit.  In particular, the following language is found in all of the specifications:

> The terms generally, substantially, and the like as applied herein with respect to vertical or horizontal orientations of various components are intended to mean that the components have a primarily vertical or horizontal orientation, but need not be precisely vertical or horizontal in orientation.  The components can be angled to vertical or horizontal, but not to a degree where they are more than 45 degrees away from the reference mentioned.  In many instances, the terms "generally" and "substantially" are intended to permit some permissible offset, or even imply some intended offset, from the reference to which these types of modifiers are applied herein.

(Ex. 1, 3:37-47; Ex. 2, 3:40-50; Ex. 3, 4:32-41; Ex. 4, 4:43-53).  Graco's attempt to interpret this language to exclude a precisely vertical axis of rotation, however, is improper, and its proposed construction must be rejected by the Court.

As an initial matter, Graco's proposed construction is not even supported by the language set forth above.[1]  Nothing in the language set forth above states that the term "generally," as applied in the claim term "generally vertical axis of rotation," means that the axis of rotation ***must have*** some intended offset.  Rather, the plain language states that the term "generally" means that the components "have a ***primarily vertical orientation***, but need not be precisely vertical or horizontal," and, "[i]n many instances,

---

[1] As set forth in Kids II's Opening Brief, Graco's construction is also not supported by the claim language. (*See* Dkt. No. 54, pp. 13-14) (citing instances in which the inventors specifically defined the "generally vertical axis of rotation" as offset from vertical in the claims, and noting that Graco's proposed construction would render such claims superfluous and meaningless, which is improper).

. . . are intended to permit some permissible offset, or even imply some intended offset." (*See* Ex. 1, 3:37-47; Ex. 2, 3:40-50; Ex. 3, 4:32-41; Ex. 4, 4:43-53).  Thus, while the "generally vertical axis of rotation" need not be precisely vertical and may have some permissible or intended offset, nothing in the language above expressly excludes a precisely vertical axis of rotation.

In interpreting the language above to exclude a precisely vertical axis of rotation, Graco ignores the remainder of the specification and violates one of the most basic rules of claim construction.  A number of the preferred embodiments in the specifications define the "generally vertical axis of rotation" as precisely vertical (*i.e.*, 90 degrees or, as described in the specifications in some instances, a 0 degree offset from the vertical reference plane."  For example, Figure 6C (reproduced below) clearly shows an example or embodiment of the invention with a precisely vertical axis of rotation by the line labeled V,R:



4

(Exs. 1-4, Fig. 6C).  Further, the specifications clearly state that the "generally vertical axis of rotation" can be precisely vertical:

> As shown in FIGS. 6B and 6C, the support arm 30 can rotate about an axis of rotation R. ***The axis of rotation R can be aligned with a vertical axis V relative to the reference plane, as shown in FIG. 6C.***
> . . .
> In one example, this angle can be about 15 degrees, ***but the angle can be*** less than 15 degrees, ***0 degrees,*** or greater than 15 degrees, ***and yet fall within the spirit and scope of the invention.***
> . . .
> In FIG. 6C, another motion alternative is shown.  In this example, ***the axis of rotation R is precisely vertical and collinear with the vertical reference axis V*** (as well as the spine axis in this example).

(Ex. 1, 6:8-13, 6:16-19, 6:37-41; Ex. 2, 6:11-16, 6:19-22, 6:40-43; *see also* Ex. 3, 7:10-15, 7:21-25, 7:43-46; Ex. 4, 7:20-25, 7:31-35, 7:53-56) (emphasis added).

Thus, the specifications teach that the "generally vertical axis of rotation" may be precisely vertical, or it may have an offset from vertical up to 45 degrees.  Graco's strained interpretation of the language set forth above ignores the teachings of the specifications as a whole, as it would improperly exclude these preferred embodiments from the scope of the claims.  *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,* 386 F.3d 1133, 1138 (Fed. Cir. 2004) ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct."); *see also Accent Packaging v. Legett & Platt,* 707 F.3d 1318, 1326 (Fed. Cir. 2013) (reversing the district court's claim construction that excluded a preferred embodiment from scope of

claims as clear error).  Graco's proposed construction must be rejected, and the Court

should adopt Kids II's construction for this claim term.

**B.    "defining" (Kids II) or "a drive system defining a generally vertical axis of rotation" (Graco)**

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "defining" (Kids II) "a drive system defining a generally vertical axis of rotation" (Graco) | forms or comprises | a drive system defining an axis of rotation with an intended offset from vertical of more than 0 degrees and up to 45 degrees |

Graco asserts that this term should not be construed, or, in the alternative, should

be construed "according to its plain meaning within the context of 'a drive system

defining a generally vertical axis of rotation.'"  But, Graco's discussion of this term in its

Opening Brief illustrates precisely why the Court should construe this term.  Indeed,

Graco intends to interpret this term at a later date in a manner that is wholly inconsistent

with its use in the claims and the specifications of the Patents-in-Suit.

The plain language of the claims requires either a "drive system" or an "upright

section"[2] "defining a generally vertical axis of rotation." (*See, e.g.,* Ex. 1, 13:35-53

(Claim 1), 16:6-26 (Claim 23)).  Graco, however, argues that while "the drive system

provides for rotational movement about a generally vertical axis of rotation, the drive

system does not have to be part of vertical axis of rotation to provide for that movement.

---

[2] As discussed in Kids II's Opening Brief, Graco's proposed construction simply regurgitates its improper construction for the term "generally vertical axis of rotation," and completely ignores the use of this claim term in conjunction with the term "upright section." (*See* Dkt. No. 54, pp. 7-10).

(*See* Dkt. No. 55, p. 22 ("It is not necessary that the drive system is or forms a vertical axis.")).  Graco's interpretation would render the claimed invention inoperable.

The teachings of the specification demonstrate that the drive system (or components of the drive system) must form the generally vertical axis of rotation in order for the claimed invention to work. (*See* Dkt. No. 54, pp.8-10).  All of the figures show a drive system (or components of a drive system) that comprise the generally vertical axis of rotation. (*See* Exs. 1 & 2, Fig. 20; Exs. 3 & 4, Figs. 9-10, 18-20).  Indeed, even Figure 9 of the '377 and '111 Patents, cited in Graco's Opening Brief, shows a drive system 62 that comprises or is collinear with the generally vertical axis of rotation R:



FIG. 9

Further, the specifications of the Patents-in-Suit expressly state that a drive system (or components of a drive system) comprises the axis of rotation. (*See, e.g.,* Ex. 3, 9:30-41 ("To that end, the drive system 62 includes a drive shaft 64 . . . . The ***shaft 62 and,***

7

***therefore, the axis of rotation R*** extend upward at an angle Θ relative to the vertical

reference) (emphasis added); *see also* Ex. 1, 10:51-56; Ex. 2, 10:53-58).  Surprisingly,

Graco cites the language emphasized above in support of its interpretation, but wholly

ignores the fact that this language equates the shaft of the drive system with the axis of

rotation R.  Because Kids II's construction takes into the account these teachings of the

Patents-in-Suit, it should be adopted by the Court.

### C.    "cantilevered"

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "cantilevered" | supported at only one end | projected generally horizontally in a radial direction and supported at only one end |

As noted in both Kids II's and Graco's Opening Briefs, the parties agree that the

term "cantilevered" means at least "supported at only one end."  Graco's attempt to

further define this term as "***projected generally horizontally in a radial direction*** and

supported at one end," however, violates two basic rules of claim construction.

First, Graco's proposed addition of the language emphasized above is an improper

attempt to read a limitation from an example or embodiment found in the specifications

into the claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323-24 (Fed. Cir. 2005)

("although the specification often describes very specific embodiments of the invention,

we have repeatedly warned against confining the claims to those embodiments."); *Selex*

*Communications, Inc. v. Google, Inc.*, No. 1:09-CV-2927, 2013 U.S. Dist. LEXIS 50061,

at *6 (N.D. Ga. April 8, 2013) (Thrash, J.) ("[T]he Court cannot limit the invention to the specific examples or preferred embodiments found in the specification.").  Graco cites the following language from the specification to support its proposed, additional language: "a support arm 30 is cantilevered from the spine 28 and extends generally outward in a radial direction from the spine" and "a support arm is mounted for pivotal side-to-side movement about . . . a travel path that is substantially horizontal." (*See* Dkt No. 55, p. 13).  But, Graco conveniently omits the language preceding these quotes that clearly indicates that these are mere examples or preferred embodiments of the invention.

> ***In this example***, a support arm 30 is cantilevered from the spine 28 and extends generally outward in a radial direction from the spine.  ***In this example***, the support arm 30 has a driven end 32 coupled to a portion of the spine 28.  The support arm 30 is mounted for pivotal side-to-side movement about its driven end through a travel path that is substantially horizontal.

(Ex. 1, 4:7-13; Ex. 2, 4:10-16; Ex. 3, 5:4-10; Ex. 4, 5:15-21) (emphasis added).  Further, immediately following this language, the inventors make it abundantly clear that their invention is not limited to these examples set forth in the specification:

> The various components of the child motion device 20 shown in Fig. 1 and various alternative embodiments of the child motion devices described herein can vary considerably and yet fall within the spirit and scope of the present invention.  A small number of examples are disclosed to illustrate the nature and variety of component configurations.

(*See, e.g.,* Ex. 1, 4:24-28).  Thus, while the specifications disclose several examples or embodiments that have a support arm that is cantilevered and extends outward in a radial

direction, there is no indication in the claims or the specifications that the inventors intended to limit their invention to those examples.

Second, as discussed in Kids II's Opening Brief, the inventors were well aware of how to expressly define the generally vertical or horizontal orientation, or even the radial direction, of the components of the invention in the claim language. (*See, e.g.,* Ex. 1, 13:39-40 (Claim 1) ("a drive system defining a ***generally vertical*** axis of rotation"), 16:7-9 (Claim 23) ("a frame assembly having a base section configured to rest on a floor surface that lies in a ***generally horizontal*** reference plane").  Even Graco apparently concedes that, in the context of the term "generally vertical axis of rotation," the inventors were well aware of how to expressly define the components of the invention using directional language. (*See* Dkt. No. 55, p. 10).  Yet, in the context of the term "cantilevered," Graco would simply ignore the inventors' express use of directional language in the claims.  Specifically, in several instances, the inventors further defined the term "cantilevered" using directional language. (*See, e.g.,* Ex. 1, 16:15-18 (Claim 23) ("a support arm . . . ***cantilevered radially outward*** relative to the axis of rotation"); Ex. 2, 15:24-26 (Claim 26) (same)).  But, the vast majority of the claims simply describe the support arm as "cantilevered."  Graco's additional, proposed language would render the additional, directional language set forth in these claims redundant and meaningless,

which is improper under Federal Circuit law.[3] *See, e.g., Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005); *Texas Instr. v. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993).  As such, Kids II's straightforward and well-supported construction should be adopted by the Court.

### D.    "driven end"

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "driven end" | the end or tip of the support arm | No construction needed.  In the event construction is needed: end moved by a drive. |

The claim term "driven end" is not a term commonly used or readily understood by a lay person.  Rather, this is a technical term used in the Patents-in-Suit to define a specific part of the support arm of the claimed invention.  Thus, construction of this term would be helpful to the jury in resolving infringement determinations.

As an initial matter, Graco has utterly failed to engage in the claim construction process in proposing an alternative construction for this term.[4]  In fact, other than a short phrase that has been cherry-picked from the specification, (*see* Dkt. No. 55, p. 27), Graco has not cited any other intrinsic or extrinsic evidence.  Graco's proposed alternative

---

[3] Under Graco's proposed construction, the relevant portion of Claim 23 of the '170 Patent would read: "the support arm [projected generally horizontally in a radial direction and supported at only one end] radially outward relative to the axis of rotation."

[4] Graco has failed to engage in the claim construction process for all of the terms set forth in the chart on pages 27 and 28 of its Opening Brief.  To the extent Graco advances new arguments or cites new evidence in support of its proposed alternative constructions not found in its Opening Brief, Kids II's reserves the right to move to strike such new arguments or evidence, or move for leave to address such new arguments or evidence.

construction – "end moved by a drive" – is redundant and unnecessary, because the plain language of the claim already states that the "driven end [is] coupled to and movable by the drive system." (*See, e.g.,* Ex. 1, 13:43-44).

Kids II's construction is straightforward, and clarifies for the jury that the "driven end" is the end or tip (*i.e.*, termination point) of the support arm coupled to and movable by the drive system.  As discussed in more detail in Kids II's Opening Brief, Kids II's construction is fully supported by the claim language and the teachings of the specification, and should be adopted by the Court.

### E.    The Child Supporting Device Terms

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "child supporting device" | a stand-alone apparatus designed to support a child | No construction needed.  In the event construction is needed: device for carrying or supporting a child. |
| "removable seat" | a stand-alone seat designed to support a child and that can be removed and used apart from the child motion device | No construction needed.  In the event construction is needed: seat that could be removed. |
| "child seat" | a stand-alone seat designed to support a child | No construction needed.  In the event construction is needed: device for supporting a child's buttocks. |

Contrary to Graco's assertions, a lay person would not readily understand the similarities and differences between the "child supporting device," "removable seat," and "child seat" of the Patents-in-Suit.  While all three terms are directed to stand-alone devices, the Patents-in-Suit teach that the "child supporting device" is broader that the

"removable seat" or "child seat," and the "removable seat" further implies use apart from the child motion device.  Thus, the Court should construe these terms to provide guidance to the jury as to the similarities and the differences between these claim terms.

In proposing alternative constructions for these three terms, Graco once again has failed to engage in the claim construction process.  While Graco proposes a different, alternative construction for each of these three terms, it relies solely on the same phrase from the specifications in support of all three of its constructions. (*See* Dkt. No. 55, pp. 27-28).  In doing so, Graco ignores the context in which these terms are used in the claims, which demonstrates that each device must be a stand-alone device.  In particular, as discussed in Kids II's Opening Brief, in order for the support arm or seat holder to be "configured to accept" or "configured to receive" the child supporting device, the device must be a stand-alone device. (*See* Dkt. No. 54, pp. 16-17).

Graco's proposed alternative constructions also ignore the differences between these three terms.  The intrinsic record demonstrates that a "child supporting device" may include any stand-alone apparatus designed to support a child, such as a child seat or a bassinet. (*See, e.g.*, Ex. 1, 4:21-23, 8:60-67, 12:55-13:2) (disclosing a number of stand-alone child supporting devices, including a child seat and a bassinet)).  In contrast, a "removable seat" is described in the specification as a seat that could be "removable from one of the disclosed motion devices and readily placed in a different product that is

13

configured to accept the seat." (Ex. 1, 13:3-12; Ex. 2, 13:5-14).  Finally, the specification teaches that a "child seat" is a stand-alone seat designed to support a child.  Graco's alternative constructions fail to address these differences, as Graco's construction for the term "child seat" – "a device for supporting a child's buttocks" – is erroneously broad enough to encompass both of its alternative constructions for "child supporting device" and "removable seat."  Kids II's construction provides guidance to the jury as to the similarities and the differences between these terms, and should be adopted by the Court.

### F.    The Frame Assembly Terms

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "base section" | the lowest or bottom portion of the frame assembly | No construction needed.  In the event construction is needed: section beneath |
| "spine" | a single vertical column or post | No construction needed.  In the event construction is needed: upward projection |
| "upright section" | the portion of the frame assembly perpendicular to the reference plane or floor surface | No construction needed.  In the event construction is needed: section that extends upward |

Contrary to Graco's assertions, construction of these three terms to define the components of the frame assembly would be helpful to the jury.  Specifically, a lay person would not readily understand the differences between the "base section," "spine," and "upright section" of the frame assembly of the claimed child motion device.

Graco relies solely on the phrase "base section 24 is positioned generally beneath" in an effort to support its alternative construction for this claim term: "section beneath." But, the full context of this phrase demonstrates that the "base section" is not simply

14

some ambiguous "section beneath," but instead the bottom part of the frame assembly that rests on the floor and offsets the load applied to the spine when the child is placed on the seat on the support arm. (*See* Ex. 1, 4:34-37; Ex. 2, 4:37-40) ("[t]he base section 24 is positioned generally beneath the seat holder 24 in order to offset the load or moment applied to the spine and created by a child placed in a seat of the cantilevered support arm."). Thus, as set forth in Kids II's Opening Brief, when this term is properly read in light of the claims and the specifications as a whole, the "base section" should be defined as the lowest or bottom portion of the frame assembly. (*See* Dkt. No. 54, pp. 21-23).

Graco's proposed alternative construction for the term "spine" is overly broad and improperly ambiguous. In particular, the term "spine" is not simply an upward projection – regardless of shape, size, or orientation – but instead is a single vertical column or post. In fact, both the phrase and figure cited by Graco strongly support Kids II's proposed construction, as the phrase uses the term "spine" and "post" interchangeably when describing the invention, and the figure depicts a single vertical column or post. *See, e.g.*, *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009) ("[t]he interchangeable use of the two terms is akin to a definition equating the two."). Further, as set forth in Kids II's Opening Brief, all of the figures in the specifications show the "spine" as a single vertical column, (*see* Exs. 1-4, Figs. 1-8), as the spine must be a single

vertical column in order to allow the cantilevered support arm to move through a partial orbit *around* the vertical axis of rotation.

Graco's proposed alternative construction for the term "upright section" is likewise overly broad and improperly ambiguous.  Graco's alternative construction for this term – "section that extends upward" – does nothing to distinguish the "upright section" from the "spine" of the claimed invention, as a "section that extends upward" would encompass an "upward projection," and vice versa.  As discussed in Kids II's Opening Brief, the Patents-in-Suit use this term to describe a specific implementation of the invention in which the upright section is, in fact, upright – *i.e.*, perpendicular to the floor surface. (*See* Dkt. No. 54, pp. 24-26).  Because Graco's alternative constructions are ambiguous and fail to clarify the differences between these three terms for the trier-of-fact, Kids II's constructions should be adopted by the Court.

### G.    "motor"

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "motor" | a rotating machine that converts electrical energy into mechanical energy through a drive shaft | No construction needed.  In the event construction is needed: powered source of motion |

Graco asserts that the term "motor" does not need construction, but then proposes an exceedingly broad construction for this term in an attempt to manufacture an infringement argument where none exists.  Graco's proposed construction – "powered

source of motion" – is purposefully designed to cover Kids II's accused product, which does not utilize a motor, but instead a proprietary hybrid drive system.

The claim language and the teachings of the specifications, however, make it clear that the "motor" of the Patents-in-Suit is not that broad.  The Patents-in-Suit describe a number of different types of drive systems, but they specifically define a "motor" – *e.g.*, an electric DC or AC motor – as one specific type of drive system. (*See* Dkt. No. 54, pp. 26-27).  In fact, several of the claims of the '111 Patent describe the "drive voltage" or "duty cycle" of the motor, which necessarily implies that the motor of the claimed invention must be defined as an electrical motor that converts electrical energy into mechanical energy. (*See, e.g.,* Ex. 4, 22:63-23:18 (Claims 1-3)).  Moreover, while self-explanatory, the motor of the Patents-in-Suit must rotate a drive shaft in some manner in order to move the child motion device around the vertical axis of rotation.  Even the phrase cited in support of Graco's proposed alternative construction strongly supports this interpretation, as it states that the "drive mechanism 372 can be configured to ***reciprocally rotate the rod***, and thus the support arm."

Graco's proposed alternative construction – "powered source of motion" – is improperly broad, as it would encompass many powered sources of motion not considered a motor by persons of ordinary skill in the art.  Even worse, Graco's proposed alternative construction would violate a basis principle of claim construction, namely,

that a dependent claim cannot be broader than the claim from which it depends. *See* 35

U.S.C. § 112, ¶ 4 ("[A] claims in dependent form shall contain a reference to a claim

previously set forth and then specify a further limitation of the subject matter claimed.");

*see also Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007)

("An independent claim impliedly embraces more subject matter than its narrower

dependent claim.").  Under Graco's alternative construction, defining the term "motor" as

a "powered source of motion" would violate this principle because "powered source of

motion" would be broader in scope than a drive system.  Graco's alternative construction

must be rejected, and the Court should adopt Kids II's construction of this claim term.

### H.   "configured"

| Claim Term | Kids II's Proposed Construction | Graco's Proposed Construction |
|---|---|---|
| "configured" | set up or designed to operate in a certain way | No construction needed.  In the event construction is needed: designed or adapted |

The claim term "configured" is used consistently in the Patents-in-Suit to describe

how the drive system or motor of the child motion device is set up or designed to operate

at a certain frequency or frequency range.  Thus, this term is used in a sense that is unique

to the claimed invention and should be construed by the Court.

As an initial matter, Graco apparently does not dispute that the term "configured"

means at least set up or designed to operate, but argues that no court has required

operation in a certain way.  Graco is wrong.  In the context of the term "configured" or

"adapted," courts often construe these terms to mean that the invention must accomplish a specific objective or operate in a certain way. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) (holding that term "adapted to" should be construed to mean that the invention was designed or configured to accomplish a specific objective).  Here, the specific objective is movement of the child motion device at a certain frequency range, or at a frequency matched to the natural frequency or resonant frequency.  As discussed in detail in Kids II's Opening Brief, the specifications of the '377 and '111 Patents describe a number of specific configurations – or design parameters – that purportedly teach a person of ordinary skill in the art how to design a child motion device that will achieve this objective. (*See, e.g.,* Ex. 3, 11:44-12:25, 12:49-61; Ex. 4, 11:54-12:40, 12:64-13:10).  Thus, Kids II's construction is entirely consistent with how this term is used in the claims and the specifications, and should be adopted to clarify this term for the trier of fact.

## I.     The Frequency Terms

### 1.  The Frequency Terms are not used interchangeably.

Contrary to Graco's assertions, the terms "natural frequency" and "resonant frequency" are not used interchangeably in the Patents-in-Suit.  Rather, these two terms are used in different claims and in different contexts, and have different meanings. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006)

19

("[T]he use of two terms in a claim requires that they connote different meanings. . . .");

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)

("In the absence of evidence to the contrary, we must presume that the use of these

different terms in the claims connotes different meanings.").  As set forth in Kids II's

Opening Brief, the intrinsic record demonstrates that the inventors used the terms

"natural frequency" and "resonant frequency" in a manner consistent with the well-

accepted, technical definitions for these claims terms.

Graco has failed to cite any evidence to the contrary that supports its argument that

these terms are used interchangeably.  For instance, Graco cites the following language

from the specifications in an attempt to argue that the terms "frequency" and "natural

resonance" are used interchangeably:

> a complex sway motion path that makes it possible to achieve a desired
> motion frequency through the natural resonance of a system with reasonable
> device dimensions.

(Ex. 3, 3:59-62; Ex. 4, 4:3-6).  But, the language plainly states that a desired motion

frequency can be achieved *through* the natural resonance of a system, which indicates

that "frequency" and "natural resonance" are not the same concept.  Moreover, Graco

conveniently ignores the fact that the relevant terms at issue are "natural frequency" and

"resonant frequency," not frequency and natural resonance.  Nothing in this language

equates the concepts of "natural frequency" and "resonant frequency." [5]

In the one instance Graco cites language from the specifications in which both the

terms "natural frequency" and "resonant frequency" are used, the specifications make it

abundantly clear that these terms are not used interchangeably.  The specifications

expressly define the terms "natural frequency" and "resonant frequency" using different

mathematical equations. (*Compare* Ex. 3, 4:1-2 *with* Ex. 3, 11:5-55).  In addition, as

discussed in detail in Kids II's Opening Brief, the claims and the specifications

consistently use the term "natural frequency" to refer to the frequency of the child motion

device based only on the parameters of the device – *i.e.*, in the absence of an external

force. (*See* Dkt. No. 54, pp. 32-35).  In contrast, the claims and the specifications

consistently use the terms "resonant frequency" when describing the speed or movement

of the child motion device by an external force, such as a drive system. (*Id.*).

In short, if the inventors had intended for the terms "natural frequency," "resonant

frequency," and "natural resonant frequency" to mean the same thing or refer to the same

_____

[5] Graco cites another passage from the specifications in which the terms "natural resonant frequency" and "natural resonance" are used. (*See* Dkt. No. 55, pp. 15-16).  But, once again, the language plainly states that the device moves at its natural resonant frequency by relying on the natural resonance of the system, which clearly indicates that these terms refer to different concepts.  Moreover, even if the language supported Graco's position that "natural resonant frequency" and "natural resonance" refer to the same concept, this language does nothing to support its position that all three claim terms refer to the same concept.

concept, they would have used one term in the claims, not three.  Graco's assertion that these three terms are used interchangeably is unsupported by the intrinsic or extrinsic evidence, and should be rejected by the Court.

> **2.  Graco's proposed construction is not supported by the intrinsic or extrinsic evidence.**

Graco's assertion that the terms "natural frequency" and "resonant frequency" (as well as the term "natural resonant frequency") should all be construed as the "frequency of free motion" is unsupported by the intrinsic or extrinsic record.  As an initial matter, the Patents-in-Suit never once define (expressly or by implication) these three terms using Graco's proposed language.  Rather, as set forth in Kids II's Opening Brief, the claims and the specifications consistently use "natural frequency" to mean "a frequency at which the system oscillates in the absence of an external force," and "resonant frequency" to mean "a frequency at which some measure of the response of a system to an external force is at a maximum."

Moreover, the language of the specifications cited in Graco's Opening Brief does not support its proposed construction.  Specifically, the "frequency of free motion" would unnecessarily add ambiguity to these claim terms, and imply to the jury that no external force is being applied to the child motion device.  As set forth in the specifications (including the language cited by Graco), however, the Patents-in-Suit teach that the child

motion device is powered by an external force, namely a drive system. (*See, e.g.,* Ex. 3, 9:30-10:57; Ex. 4, 9:40-10:67).

As such, Graco's proposal appears to be nothing more than yet another improper attempt to read a limitation from an embodiment in the specifications into the claims. Indeed, in support of its proposal, Graco states that the "Graco patentees describe an indirect drive technique 'to allow the motor to support motion at the natural resonant frequency of the device and otherwise allowing the system to move at resonance.'" (*See* Dkt. No. 55, p. 17).  But, the specifications also state that:

> Practice of the disclosed devices and methods is not limited to the above-described indirect drive technique, but rather may alternatively involve any one of a number of different motor drive schemes and techniques.
>
> . . .
>
> One such technique involves a direct drive mechanism in which the motor shaft is mechanically linked to the swing pivot shaft without allowing for any slippage.

(Ex. 3, 10:16-19, 10:31-36; Ex. 4, 10:26-29; 10:41-46).  If Graco's proposed construction were adopted by the Court, it would exclude the direct drive techniques described in the Patents-in-Suit from the scope of the claims, as the specifications expressly teach that the direct drive techniques do not rely on the resonance of the system. (*See* Ex. 3, 11:14-17 ("Unlike direct drive systems, where the drive system can be configured to move the support arm at the desired frequency, devices having indirect drive systems are designed to reciprocate at the desired frequency through natural resonance")).  Because Graco's

23

proposed construction is not supported by the intrinsic or extrinsic record, it should be rejected, and the Court should adopt Kids II's well-supported constructions for the claim terms "natural frequency" and "resonant frequency."

### 3.   The term "natural resonant frequency" is indefinite.

Contrary to Graco's assertions, claim construction is the proper setting for the Court to determine whether or not a term is indefinite pursuant to 35 U.S.C. § 112. *See Datamize , LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005) (indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable in determining whether indefinite claim language is subject to construction).  While Graco cites two nonbinding district court cases that have declined to consider indefiniteness at claim construction, a number of district courts have properly considered an indefiniteness challenge at claim construction. *See, e.g., Sandovik Intellectual Prop. AB v. Kennametal, Inc.*, No. 10-CV-00654, 2012 U.S. Dist. LEXIS 103169, at *17 (W.D. Pa. July 24, 2012) ("the determination of claim indefiniteness is a legal conclusion that is properly part of the Court's performance of its duty as the construer of patent claims and that such determination is properly party of claim construction at a Markman Hearing."); *PureChoice, Inc. v. Honeywell Int'l, Inc.*, No. 2:06-CV-244, 2008 U.S. Dist. LEXIS 4246, at *17-19 (E.D. Tex. Jan. 22, 2008) (considering indefiniteness challenge at claim construction stage and finding claim terms

24

indefinite).  Thus, Kids II's indefiniteness challenge is not premature, as the relevant inquiry is "whether a person experienced in the field of the invention would understand the scope of the claim when read in light of the specification." *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1369 (Fed. Cir. 2006).

As discussed in detail in Kids II's Opening Brief, the claim term "natural resonant frequency" is indefinite because a person of ordinary skill in the art would not understand the scope of this term.  Unlike the terms "natural frequency" and "resonant frequency," which have well-understood, technical meanings, thits term is a "made-up" claim term that is not defined with reasonably clarity or precision to enable one of ordinary skill in the art to discern the meaning of this term.  As a result, a person of ordinary skill in the art is left guessing whether this term has a meaning similar to natural frequency, resonant frequency, or something else altogether.  Thus, when viewed in the context of the intrinsic, and the knowledge of a person of ordinary skill in the art, the Court should determine this term is not amenable to construction and is indefinite.

## III.   CONCLUSION

For the foregoing reasons and those set forth in Kids II's Opening Brief, Kids II respectfully requests that the Court adopt its proposed construction for 14 of the 15 claim terms in dispute, and conclude that the term "natural resonant frequency" is indefinite pursuant to 35 U.S.C. § 112.

Dated this 10th day of June, 2013.

/s/ Scott P. Amy
N. Andrew Crain
Georgia Bar No. 193081
Scott P. Amy
Georgia Bar No. 141416
THOMAS | HORSTEMEYER LLP
400 Interstate North Parkway SE
Atlanta, GA 30339
Phone: (770) 933-9500
Fax: (770) 951-0933
andrew.crain@thomashorstemeyer.com
scott.amy@thomashorstemeyer.com

Joseph W. Staley
Georgia Bar No. 142571
KIDS II, INC.
3333 Piedmont Road NE #1800
Atlanta, GA 30305
Phone: (770) 751-0442
Fax: (770) 751-0543
joe.staley@kidsii.com

*Attorneys for Defendant Kids II, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRACO CHILDREN'S
PRODUCTS INC.

     Plaintiff,

v.

KIDS II, INC.

     Defendant.

CIVIL ACTION NO:

1:12-CV-3246-SCJ

## **LOCAL RULE 7.1D CERTIFICATION**

I hereby certify that the foregoing Kids II, Inc.'s Responsive Claim Construction Brief was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

Dated this 10th day of June, 2013.

/s/ Scott P. Amy
Scott P. Amy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GRACO CHILDREN'S PRODUCTS INC.<br><br>        Plaintiff,<br><br>v.<br><br>KIDS II, INC.<br><br>        Defendant. | CIVIL ACTION NO:<br><br>1:12-CV-3246-SCJ |

## **CERTIFICATE OF SERVICE**

I hereby certify that on Monday, June 10, 2013, the foregoing Kids II, Inc.'s Responsive Claim Construction Brief was electronically filed with the Court via the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

/s/ Scott P. Amy
SCOTT P. AMY

28